UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARDEEP KUMAR, | Case No. 5:26-cv-01988-MAR |
| Petitioner, | |
| v. | ORDER ON PETITION FOR HABEAS CORPUS |
| JAIME RIOS et al., | |
| Respondents. | |

## I.

## **INTRODUCTION**

On May 15, 2026, Pardeep Kumar ("Petitioner"), by and through counsel, filed a Petition for Writ of Habeas Corpus ("Petition") by a Person in Federal Custody pursuant to 28 U.S.C. § 2241.  ECF Docket Nos. ("Dkt.") 1.  Petitioner argues his detention in Immigration and Customs Enforcement ("ICE") custody without a pre-deprivation hearing violates his Fifth Amendment due process rights and the Immigration and Nationality Act ("INA").  Petitioner seeks release.  Pet. at 15. [1] Respondents have filed an Answer.  Dkt. 8.  For the reasons set forth below, the Petition is **GRANTED**.

## II.

---

[1] All citations to electronically filed documents refer to the CM/ECF pagination.

## **BACKGROUND**

Petitioner is a citizen of India who most recently arrived in the United States on or about March 24, 2023.  Dkt. 1 ("Pet") at 5.  Upon his entry, Petitioner was issued a Notice to Appear, detained, and released from custody and told to report regularly to immigration officials under the Intensive Supervision Appearance Program ("ISAP").  Id. at 7.  Petitioner filed for asylum on May 15, 2023.  Id.  On September 14, 2025, Petitioner was arrested by immigration authorities when he appeared for his regular immigration check-in.  Id.  Petitioner has no ISAP violations or criminal history.  Id. at 8.

On January 12, 2026, Petitioner filed a Petition for Writ of Habeas Corpus (the "First Petition") challenging his detention.  See Kumar v. Noem, No. 2:26-cv-279-VBF-MAR, Dkt. 1.  On January 16, 2026, the district judge granted Petitioner's application for a Temporary Restraining Order, ordering his immediate release or, alternatively, that he be provided a bond hearing before an immigration judge within seven days.  Pet. at 3; No. 2:26-cv-279-VBF-MAR, Dkt. 9.  On January 20, 2026, Petitioner had a bond hearing in which the Immigration Judge (IJ) found that Petitioner failed to meet his burden to establish he was not a flight risk.[2]  See Pet. at 31, Ex. E.  On March 17, 2026, pursuant to Rodriguez v. Robbins, Petitioner had a second bond hearing at which the IJ found that Respondents had met their burden of showing that Petitioner was a flight risk.  See Pet. at 38, Ex. G.  On April 21, 2026, Petitioner filed the instant habeas petition (the "Petition") alleging that his continued detention violates the Immigration and Nationality Act and his due process rights.[3]  Id. at 10–15.  Petitioner asks this Court to declare that his re-detention was unlawful, order his immediate release, and order that Petitioner may not be re-detained absent

---

[2]  Whether this burden is properly placed on a noncitizen seeking bond is addressed below.

[3]  Following the district judge's grant of temporary injunctive relief, Petitioner dismissed the First Petition, then later filed the instant Petition challenging the same detention at issue in the First Petition.  No. 2:26-cv-279-VBF-MAR, Dkt. 11.  The instant Petition, which has been assigned to the undersigned for all purposes, thus operates essentially as an amended petition.

proper notice of the reasons that form the basis for revocation of parole and a hearing before an immigration judge.  Id. at 15–16.

Respondents filed an answer on April 28, 2026.  Dkt. 8, Answer.  Respondents argue that the Petition is moot, that the Court lacks jurisdiction to contest the IJ's bond decision, that the Court lacks jurisdiction under 8 U.S.C. § 1252, that Petitioner has failed to exhaust administrative remedies, and that Petitioner does not identify any violation of due process that justifies habeas relief.  On May 1, 2026, Petitioner filed a document entitled a "motion to enforce."  Dkt. 9.  The motion directly responds to Respondents' Answer, and the Court construes it as Petitioner's Reply.  Thus, the matter stands submitted.

The Court finds that Petitioner's detention—without any meaningful pre-deprivation notice or an opportunity to be heard—violates due process. Accordingly, the Court orders that the Petition be granted and a writ of habeas corpus be issued requiring Petitioner's immediate release and preventing his re-detention absent pre-deprivation notice and a hearing.

## III.

## LEGAL STANDARD

A district court may grant a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c); Magana-Pizano v. I.N.S., 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.' ").  In federal habeas proceedings, the petitioner bears the burden of proving his case by a preponderance of evidence.  Lambert v. Blodgett, 393 F.3d 943, 970 n.16 (9th Cir. 2004); Bellew v. Gunn, 532 F.2d 1288, 1290 (9th Cir. 1976) (citations omitted).

///

## IV.

3

**DISCUSSION**

Consistent with recent decisions in this district and others, the Court finds that Petitioner's September 14, 2025 re-detention—without notice or a meaningful opportunity to be heard—violated procedural due process.

**A.  DUE PROCESS**

The Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." Demore v. Kim, 538 U.S. 510, 523 (2003) (citing Reno v. Flores, 507 U.S. 292, 306 (1993)). The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127 (1990).

In several recent decisions, courts in this district have found that immigration authorities violated or likely violated due process by re-detaining, without notice or an opportunity to be heard, noncitizens who had been detained and released shortly after their entry to the United States. See Cruz v. Lyons, et al., No. 5:25-cv-02879-MCS-MBK (C.D. Cal. Nov. 6, 2025) at Dkt. 12 (granting TRO ordering release of noncitizen who had been paroled into the United States and was re-arrested at appointment with United States Citizenship and Immigration Services); Yataco v. Warden, Adelanto Det. Facility, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *1 (C.D. Cal. Dec. 26, 2025), adopted, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) (granting petition of noncitizen who had been paroled and was re-arrested at ICE check-in); see also M.V.F. v. Santacruz, No. 2:25-cv-11700-MEMF-E, 2025 WL 3691419, at *5 (C.D. Cal. Dec. 19, 2025) (granting TRO ordering release of noncitizen who had been released on their own recognizance shortly after entering the United States and was re-arrested at ICE check-in).

As in these cases, the Court considers Petitioner's procedural due process claim under the familiar framework set forth in Mathews v. Eldridge, 423 U.S. 319 (1976),

which considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest.  Mathews, 423 U.S. at 335.

**B.    ANALYSIS**

**1. Jurisdiction, exhaustion, and mootness**

As an initial matter, Respondents contend this Court lacks jurisdiction to consider the Petition under 8 U.S.C. § 1226(e) and 1252(a)(5).  Answer at 9–12. Section 1226(e) provides: "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."  8 U.S.C. § 1226(e).  "That provision does not, however, preclude habeas jurisdiction over constitutional claims or questions of law."  Hernandez v. Sessions, 872 F.3d 976, 987 (9th Cir. 2017) (quotation marks and citations omitted). "Claims that the discretionary bond process itself was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of [28 U.S.C.] § 2241."  Id. (cleaned up).  Section 1252(b)(9) and (a)(5) channel review of an order of removal directly to courts of appeals rather than to district courts.  See J.E.F.M. v. Lynch, 837 F.3d 1026, 1031 (9th Cir. 2016); Martinez v. Napolitano, 704 F.3d 620, 623 (9th Cir. 2012).  Actions that do not challenge final orders of removal, however, are not subject to this channeling scheme.  See J. E.F.M., 837 F.3d at 1032; Martinez, 704 F.3d at 623 (explaining § 1252(a)(5) only bars challenges to "an order of removal" but "does not eliminate the ability of a court to review claims that are 'independent of challenges to removal orders'").

Petitioner challenges the constitutionality and sufficiency of the process by which he was arrested, had his parole revoked, and was re-detained.  See Pet.  This court has habeas jurisdiction under § 2241 to consider these constitutional claims.  See Hernandez, 872 F.3d at 987; Noori v. LaRose, 807 F. Supp. 3d 1146, 2025 WL 2800149, at *5–8 (S.D. Cal. 2025) (finding district court had habeas jurisdiction to consider a petition challenging the lawfulness of the detention and revocation of

5

parole of an asylum seeker); Magomed Mumaev, Petitioner, v. Fereti Semaia, et al., Respondents., No. 5:25-CV-03409-FLA (MAR), 2026 WL 530765, at *2 (C.D. Cal. Feb. 20, 2026) (same); see also N.A. v. Warden, Adelanto Det. Facility, 2026 WL 734585 (C.D. Cal. Mar. 12, 2026) (citing Martinez, 124 F. 4th at 783) (discussing jurisdiction to review constitutionality of bond hearing).  Courts review constitutional challenges to bond determinations under an "abuse of discretion" standard. See C.A.R.V. v. Wofford, 2026 WL 241823, at *3 (E.D. Cal. Jan. 29, 2026) ("In constitutional challenges to an IJ's detention determination, a habeas court generally reviews mixed questions of fact and law under an 'abuse of discretion' standard."); Martinez v. Clark, 124 F.4th 775, 784 (9th Cir. 2024) ("When questions require a close review of agency-found facts, like the 'dangerousness' determination, we review for an abuse of discretion.").  Abuse of discretion review "is limited to whether the IJ's decision reflects clear legal error or is unsupported by sufficient evidence."  C.A.R.V., 2026 WL 241823, at *3 (internal quotation marks omitted).

"When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused."  Leonardo v. Crawford, 646 F.3d 1157, 1160 (9th Cir. 2011).  In the context of a habeas petition, however, the administrative exhaustion requirement is prudential, not mandatory or jurisdictional.  See Y.S.G. v. Andrews, 2025 WL 2979309, at *7 (E.D. Cal. Oct. 22, 2025) ("The federal habeas statute under which this case was filed does not require exhaustion of administrative remedies.") (emphasis added).  A petitioner is not, therefore, required to exhaust administrative remedies where exhaustion would be futile or irreparable harm would result.  Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004); Marroquin Ambriz v. Barr, 420 F. Supp. 3d 953, 961–962 (N.D. Cal. 2019) (waiving exhaustion requirements and noting the BIA lacks jurisdiction to decide questions of constitutionality of immigration laws); see also Wang v. Reno, 81 F.3d 808, 814 n.8 (9th Cir. 1996) (per curiam).  The alleged "violation of Petitioner's due

process rights is sufficient to satisfy the irreparable harm requirement." Doe v. Becerra, 787 F. Supp. 3d 1083, 1095 (E.D. Cal. 2025).  Even where, as here, a petitioner has appealed a bond determination to the BIA, "requiring Petitioner to be subjected to unlawful detention pending the BIA's decision would [also] cause irreparable harm."  Rodriguez Cabrera v. Mattos, 808 F. Supp. 3d 1159, 1176 (D. Nev. 2025); Y.S.G., 2025 WL 2979309, at *7 ("[P]etitioner has adequately demonstrated that irreparable injury will result if he has to await the outcome of his BIA appeal.").  Further, even if the BIA were to ultimately reverse the IJ's decision denying bond, that would not afford Petitioner an adequate administrative remedy for his prolonged detention in the interim.  "[B]ecause of delays inherent in the administrative process, BIA review would result in the very harm that the bond hearing was designed to prevent: prolonged detention without due process during lengthy and backlogged removal proceedings."  Hechavarria v. Whitaker, 358 F. Supp. 3d 227, 237 (W.D.N.Y. 2019) (citation modified).

Finally, although Petitioner was granted temporary relief, such relief does not moot a Petition where there remains a live case or controversy.  "Under Supreme Court and Ninth Circuit precedent, temporary relief, up to and including a petitioner's release, does not render a case moot."  Arab v. Noem, No. 5:26-CV-00286-JWH-DSR, 2026 WL 425693, at *1 (C.D. Cal. Feb. 13, 2026) (citing Tang v. Bondi, 2025 WL 3551381, at *2 (W.D. Wash. Dec. 11, 2025).  A case is moot when: (1) "the issues presented are no longer live"; or (2) the parties lack a "legally cognizable interest in the outcome."  United States Parole Comm'n v. Geraghty, 445 U.S. 388, 396 (1980).  Here, Petitioner remains in detention.  The issues presented are thus still "live," and Petitioner unquestionably has a "legally cognizable interest in the outcome."  Id.

**2. Due process violation**

Consistent with the prior findings of the district judge, the Court finds that Petitioner, having been previously released on parole, has a protected liberty interest in remaining free from detention.  See No. 2:26-cv-279-VBF-MAR, Dkt. 9; Garcia v.

Noem, No. 25-CV-3759-LL-BLM, 2026 WL 194745, at *2 (S.D. Cal. Jan. 26, 2026); Hurd v. D.C., Gov't, 864 F.3d 671, 683 (D.C. Cir. 2017) ("a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated."). "[E]ven individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the ... conditions [of release].'" Garcia, 2026 WL 194745, at *2 (citing Pinchi, 792 F. Supp. 3d at 1032); Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. See Mathews v. Eldridge, 424 U.S. 319, 334–35 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court considers the following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335.

All three factors support a finding that the government's arrest of Petitioner without notification, reasoning, or an opportunity to be heard, denied Petitioner of his due process rights. See Garcia, 2026 WL 194745, at *3. First, freedom from imprisonment is at the "core of the liberty protected by the Due Process Clause." Hernandez, 872 F.3d at 993 (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).

As discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to his parole.  See Pinchi, 792 F. Supp. 3d at 1032 ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." (citations omitted)); see Cruz, No. 5:25-cv-02879, Dkt. 12 at 6; Yataco, 2025 WL 4065463, at *1; C.A.R.V., 2025 WL 3059549 at * 10 (finding a petitioner had a constitutionally protected liberty interest in "approximately four years on parole"); Fernandez Lopez v. Wofford, No. 1:25-cv01226-KES-SKO, 2025 WL 2959319, at *4 (E.D. Cal. Oct. 17, 2025) (same); Manzanarez v. Bondi, No. 1:25-cv-01536-DC-CKD, 2025 WL 3247258 at *4 (E.D. Cal. Nov. 20, 2025) (same, with respect to "over two years" on an order of release on recognizance).

With respect to the second Mathews factor, the Court finds that "[t]here is an unacceptably high risk that the government would erroneously deprive— or already has erroneously deprived—Petitioner of his liberty interest absent a pre-detention hearing."  Cruz, No. 5:25-cv-02879, Dkt. 12 at 7.  The fact that Petitioner received a post-deprivation bond hearing, after his re-detention by immigration authorities, does not remedy the violation of Petitioner's procedural due process rights.  See, e.g., E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); Domingo v. Kaiser, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.").

Indeed, "an increasing wave of district courts have concluded[] [that] a post-hoc bond hearing cannot support [a] [p]etitioner's continued detention when the

9

underlying arrest, revocation of parole, and re-detention were in violation of [the] [p]etitioner's due process rights and, thus, invalid." Orellana, Rivera v. J. Johnson, 2026 WL 1390433, at *1 (C.D. Cal. May 14, 2026) (citing Mumaev v. Semaia, 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026); Charaf v. Rios, 2026 WL 1270754, at *1 (C.D. Cal. May 5, 2026); Morales v. U.S. Immigr. and Customs Enf't, 2026 WL 1026234 (C.D. Cal. Apr. 15, 2026); Osmel v. D. Marin, 2026 WL 1209477, at *3 (C.D. Cal. Apr. 29, 2026); Singh v. Janecka, 2026 U.S. Dist. LEXIS 95798, at *16–17 (C.D. Cal. Apr. 29, 2026)).  This is especially so where a post-deprivation bond hearing is itself constitutionally deficient.  As discussed above, this Court reviews mixed questions of law and fact, such as that presented by a challenge to a flight-risk determination by an IJ, under a deferential "abuse of discretion" standard.  See Martinez, 124 F.4th at 784.  Nevertheless, when the decision of an IJ is "arbitrary, irrational, or contrary to law," it is an abuse of discretion.  Bonilla v. Lynch, 840 F.3d 575, 581 (9th Cir. 2016) (quoting Avagyan v. Holder, 646 F.3d 672, 678 (9th Cir. 2011)).  In an abuse-of-discretion challenge to a determination by an IJ as to whether to grant release on bond, there are at least two ways to challenge whether the IJ applied the correct standard of proof.  "First, a challenge may be based on the contention that the decisionmaker erred because the evidence itself could not—as a matter of law—have supported the adjudicator's conclusion.  Second, it may be clear from the adjudicator's opinion itself that he simply did not apply the correct standard to the facts." Hechavarria, 358 F. Supp. 3d at 240 (citations omitted).  In other words, "[i]n reviewing the IJ's determination, a district court may not second guess the IJ's weighing of the evidence" because "review is limited to whether the IJ's decision reflects clear legal error or is unsupported by sufficient evidence." Quan v. Barr, No. 20-CV-8118, 2021 WL 308610, at *4 (N.D. Cal. 2021) (citation modified); see also Martinez, 124 F.4th at 784 ("[A]buse of discretion" review in this context does not permit "reweigh[ing] evidence.").

"[T]he government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond." Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011); see also Martinez, 124 F.4th at 784–86 (applying clear and convincing standard to bond hearing ordered pursuant to due process and citing to Singh); De La Garza v. Albarran, No. 25-CV-10305-HSG, 2025 WL 3707049, at *2 (N.D. Cal. Dec. 22, 2025). The clear and convincing evidence standard requires "an abiding conviction that the truth of [the] factual contentions at issue is highly probable." Mondaca-Vega v. Lynch, 808 F.3d 413, 422 (9th Cir. 2015) (en banc) (citation modified). This is an "intermediate burden of proof that is more than a preponderance of the evidence but less than proof beyond a reasonable doubt." Rodriguez v. Robbins, 804 F.3d 1060, 1087 (9th Cir. 2015), rev'd sub nom. Jennings v. Rodriguez, 583 U.S. 281 (2018); see also 9th Cir. Model Civil Jury Instruction 1.7 (2025) (clear and convincing evidence is "evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions ... are true"); United States v. Patriarca, 948 F.2d 789, 792 (1st Cir. 1991) (clear and convincing evidence must be demonstrated in fact, not "in theory"). Several courts in this district have found that an immigration judge abuses their discretion where they fail to apply the correct burden of proof. See e.g., Mendoza v. Noem, No. 25-CV-3227, 2026 WL 923311, at *4 (C.D. Cal. Apr. 1, 2026) ("The bond hearing Petitioner received ... failed to comport with due process because 'the IJ did not hold Respondents to a clear and convincing burden of showing that Petitioner was a flight risk.' ... Such a failure to apply the correct legal standard constitutes an abuse of discretion by the IJ." (quoting Melchor-Melchor v. Noem, No. 26-CV-766, 2026 WL 760058, at *1 (C.D. Cal. Mar. 16, 2026))).

In this case, the order denying bond states, in totality, "The Court considered the applicant's request for bond. DHS met its burden to establish by clear and convincing evidence that the applicant's release would pose such a significant risk that no amount of bond and/or alternatives to detention would be appropriate. Bond

11

denied." Pet. at 38. This conclusory order does ostensibly hold the government to the correct burden of proof. But even though the IJ did invoke the correct burden, the two-sentence order, devoid of any reasoning, nonetheless constitutes an abuse of discretion for failure to "consider and address in its entirety the evidence submitted by [the] petitioner." Hossein Miri v. Bondi, No. 5:26-cv-00698-MEMF-MAR, 2026 WL 622302, at *7-9 (C.D. Cal. Mar. 5, 2026); Y.S.G., 2025 WL 2979309, at *9 (finding an abuse of discretion when the IJ "failed to meaningfully discuss the probative evidence submitted demonstrating his significant ties to the community."). In the context of a flight-risk determination, factors unique to the detainee must be evaluated in determining whether the noncitizen is unlikely to appear for future immigration proceedings. See In re Patel, 15 I. & N. Dec. 666, 666–67 (BIA 1976) (ordering release on recognizance where IJ had erroneously set a bond based on factors that "bear little if any relevance to the issue of whether or not the respondent is likely to appear for his deportation proceeding"); Rodriguez Diaz v. Garland, 53 F.4th 1189, 1202 (9th Cir. 2022) (explaining that 8 U.S.C. § 1226(a) requires an "individualized bond determination") (internal quotation marks omitted). In Martinez, the Ninth Circuit found that the immigration judge had not abused his discretion where he "evaluated [petitioner's] mitigating evidence, such as his successful pre-incarceration release on bond, the district court's statements during sentencing, his efforts at rehabilitation, his family ties, and his strong community support," 124 F.4th at 780. Here, in contrast, the Immigration Judge's Order fails to include any indication that the Immigration Judge considered any of the relevant factors in determining that Petitioner posed a flight risk. Petitioner asserts, and Respondents do not dispute, that Petitioner presented evidence of a sponsor who "has double the income from the previous," that Petitioner was detained when he appeared for his ICE check-in, that Petitioner had no ISAP violations, and that Petitioner has no criminal history. Pet. at 3. The IJ's Order, however, does not address any of these facts, or provide any explanation how Respondents met their burden to show risk of flight despite these

factors. Martinez 124 F.4th at 780. As in Miri, the immigration judge here "did not explain the reasons for denying [Petitioner's] bond and the record does not establish that the Immigration Judge relied on the appropriate factors." 2026 WL 622302, at *9.

Accordingly, based on Respondents' revocation of Petitioner's release without (1) pre-deprivation process, (2) any allegation that Petitioner "failed to live up to the ... conditions [of release]," or (3) post-deprivation bond hearings that considered Petitioner's flight risk in relation to the relevant factors and provided a reasoned decision denying Petitioner's bond, the Court finds the risk of an erroneous deprivation of Petitioner's liberty interest is substantial. Garcia, 2026 WL 194745, at *2.

As to the third Mathews factor, the government's interest in detaining Petitioners without notice, reasoning, and a hearing is low. See Pinchi, 792 F. Supp. 3d at 1036 ("[T]he government has articulated no legitimate interest that would support arresting [petitioner] without a pre-detention hearing."); Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."); Cruz, No. 5:25-cv-02879, Dkt. 12 at 7 (collecting cases). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez, 872 F.3d at 994. Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]" Sun v. Santacruz, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (quoting Doe v. Becerra, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In immigration court, custody hearings are routine . . . ." Singh v. Andrews, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025). There is no indication that providing proper notice,

13

reasoning, and a pre-deprivation hearing would be fiscally or administratively burdensome on the government.  See Garcia, 2026 WL 194745, at *3.

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the Government's lack of constitutionally-adequate procedures has resulted in his unnecessary detention, and the Government's interest in refusing to provide such process is minimal.  The Government's re-detention of Petitioner without adequate pre-deprivation process violated due process.  See, e.g., Sanchez, 2025 WL 2770629, at *4 (finding the petitioner's parole was revoked without notice and a hearing and without a showing of a change of circumstances, thus violating her due process rights and rendering her detention unlawful); Garcia, 2026 WL 194745, at *3 (same); Mumaev, 2026 WL 530765 (same).

### 3. Remedy

The Supreme Court has repeatedly emphasized that "[h]abeas is at its core a remedy for unlawful executive detention," and "[t]he typical remedy for such detention is, of course, release."  Munaf v. Geren, 553 U.S. 674, 693 (2008) (citing Preiser v. Rodriguez, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."))

The Ninth Circuit has similarly held that "the purpose of habeas remedies is to 'put the [petitioner] back in the position he would have been in if the [constitutional] violation never occurred.'"  Lujan v. Garcia, 734 F.3d 917, 935 (9th Cir. 2013) (quoting Nunes v. Mueller, 350 F.3d 1045, 1057 (9th Cir. 2003)); accord Chioino v. Kernan, 581 F.3d 1182, 1184 (9th Cir. 2009).  Thus, "[a]s has been found in countless similar cases in this Circuit, the appropriate remedy in such cases is to order Petitioner placed in the position he would have been absent the due process violation—that is, he should be released from custody on the conditions that were initially imposed." Iurii Mazurov v. Desert Annex Det. Facility, No. 5:26-CV-02236-BFM, 2026 WL 1365164, at *4 (C.D. Cal. May 8, 2026) (citing cases); see also Changoluiza Corrales v.

D. Marin, No. EDCV 26-01716-KK-RAOX, 2026 WL 1047934, at *6 (C.D. Cal. Apr. 15, 2026) (citing Pablo Sequen v. Albarran, 806 F. Supp. 3d 1069, 1089 (N.D. Cal. 2025)); Morales v. U.S. Immigr. & Customs Enf't, No. 5:26-CV-01404-DOC-MAR, 2026 WL 1026234, at *7 (C.D. Cal. Apr. 15, 2026) ("join[ing] numerous of its sister courts in finding that Petitioner's detention is unlawful" due to unlawful parole revocation and ordering release notwithstanding prior TRO providing a bond hearing and collecting cases); Gutierrez v. Semaia, No. 5:26-CV-01181-HDV, 2026 WL 916773, at *2 (C.D. Cal. Mar. 27, 2026); Domingo v. Kaiser, No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) (similar).  As one court in this district has aptly put it, "[t]he Court must heed the language in Mathews that '[a] claim to a predeprivation hearing as a matter of constitutional right rests on the proposition that full relief cannot be obtained at a postdeprivation hearing.'" Villegas Molina v. Mullin, No. 2:26-CV-04091-MWC-SP, 2026 WL 1182194, at *3 (C.D. Cal. Apr. 23, 2026) (quoting Mathews, 424 U.S. at 331).  Accordingly, this Court and various others have ordered release even where a belated bond hearing has taken place.  See Charaf, 2026 WL 1270754, at *6; Mumaev v. Semaia, No. 5:25-CV-03409-FLA-MAR, 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026); see also Singh v. Janecka, 5:26-cv-01414-ACCV, 2026 U.S. Dist. LEXIS 95798, at *16-17 (C.D. Cal. Apr. 29, 2026); Medrano-Rocha v. Santacruz, No. CV-26- 00404-KK-AGRX, 2026 WL 411355, at *6 (C.D. Cal. Jan. 23, 2026) ("Providing Petitioner with a post-detention hearing or other procedural remedy will not redress the constitutional violation Petitioner has suffered in being re-detained without a predeprivation hearing required by due process."); Saballos Rosales v. Noem, No. 5:26- CV-00112-JWH-MBK, 2026 WL 761371, at *3 (C.D. Cal. Mar. 16, 2026) ("[T]he post-detention process that Rosales did receive, and will receive, 'is no substitute for the pre-detention process she was owed.'" (quoting Hasratyan v. Bondi, No. 5:26-CV00210-MCS-ADS, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026))).  Such is the proper remedy here.

For the reasons stated above, the Court finds that Petitioner's re-detention was unlawful, orders his forthwith release subject only to the conditions of his preexisting parole, and enjoins the Government from re-detaining Petitioner absent notice and an opportunity to be heard with his counsel present.

## IV.

## ORDER

**IT IS THEREFORE ORDERED** that:

(2) the Petition is **GRANTED**;

(3) Respondents are **ORDERED** to immediately release Petitioner **Pardeep Kumar (A-Number 246-749-084)** from custody subject only to the conditions of his preexisting parole;

(4) Respondents are **ORDERED** to return all of Petitioner's belongings, including his identification documents, work authorization documents, and other possessions;

(5) Respondents are **ORDERED** to file a statement within one business day of Petitioner's release, attesting to Respondents' compliance with this Order; and

(5) Respondents are **ORDERED** to not re-detain Petitioner unless Respondents provide at least seven days' notice to Petitioner and his counsel that they will seek a pre-deprivation custody hearing before a neutral arbiter at which the government bears the burden of proving, by clear and convincing evidence, that Petitioner is a flight risk or danger to the community, and that there are no conditions that will reasonably assure Petitioner's appearance and public safety, and that the arbiter consider Petitioner's ability to pay and alternatives to detention.

Dated:  June 12, 2026

_____

HONORABLE MARGO A. ROCCONI
United States Magistrate Judge

16